UNITED STATES ex rel. TURNER v. WILLIAMS, Immigration Com'r.

(Circuit Court, S. D. New York. November 7, 1903.)

1. ALIENS—IMMIGRATION—EXCLUSION OF ANARCHISTS—FACT OF ANARCHISTIC BELIEF—DECISION OF BOARD OF SPECIAL INQUIRY—CONCLUSIVENESS.
    A decision of the immigration board of special inquiry that an immigrant is an anarchist is not open to review by the United States Circuit Court in habeas corpus proceedings.

**2. SAME—CONSTITUTIONALITY OF STATUTE—GUARANTY OF RELIGIOUS FREEDOM AND FREEDOM OF SPEECH.**

Immigration Act March 3, 1903, c. 1012, § 2, 32 Stat. 1214 [U. S. Comp. St. Supp. 1903, p. 172], by which alien anarchists are excluded from the United States, is not in contravention of article 1 of the amendments to the Constitution, providing that Congress shall make no law prohibiting the free exercise of religion or abridging the freedom of speech.

Application for Habeas Corpus to Discharge from Custody.

Hugh O. Pentecost, for relator.

Robert A. Paddock, for respondent.

LACOMBE, Circuit Judge. The immigration act of March 3, 1903, c. 1012, § 2, 32 Stat. 1214 [U. S. Comp. St. Supp. 1903, p. 172], increased the number of classes of aliens who were to be excluded from admission into the United States. Among these additional classes are found "polygamists, anarchists, or persons who believe in or advocate the overthrow by force or violence of the government of the United States or of all government or of all forms of law, or the assassination of public officials." The board of special inquiry has examined into the facts, and decided that Turner is an "anarchist." That decision is not open to review here.

The contention of relator is that the exclusion act is unconstitutional. That objection has been raised in very many cases, and in all of them has been overruled. Indeed, counsel concedes, for the purposes of this argument, that, as to all the kinds of persons enumerated in the act except anarchists, it is within the constitutional powers of Congress to exclude them. It is undoubtedly true that in the case of persons who are insane, or afflicted with contagious disease, or of some particular race or nationality, or who have been convicted of crime involving moral turpitude, the differentiation is physical, rather than mental. Nevertheless it is not perceived why the principles laid down in Ekiu's Case, 142 U. S. 657, 12 Sup. Ct. 336, 35 L. Ed. 1146, and a long line of similar decisions, do not apply equally to a person who is differentiated by the possession and advocacy of specified beliefs as to the conduct and regulation of society. "It is an accepted maxim of international law that every sovereign nation has the power, as inherent in sovereignty and essential to self-preservation, to forbid the entrance of foreigners within its dominions, or to admit them only in such cases and upon such conditions as it may see fit to prescribe. * * * In the United States this power is vested in the national government, to which the Constitution has committed the entire control of international relations in peace as well as in war." Ekiu's Case, supra. Undoubtedly the Constitution which committed this power to the national government might have restricted its exercise in any way that seemed appropriate to the persons who framed that instrument, and to the states which adopted it. But the difficulty with the relator's case is that he can turn to no such restriction which affects him. His contention is that Congress is prohibited from excluding anarchists by the provisions of article 1 of the amendments to the Constitution, which reads:

"Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof; or abridging the freedom of speech or

of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances."

It is difficult to understand upon what theory the exclusion of an alien who is an anarchist can be held to be a prohibition of the free exercise of religion. As to abridgment of the freedom of speech, that clause deals with the speech of persons in the United States, and has no bearing upon the question what persons shall be allowed to enter therein.

All the other questions raised upon this application have been decided in earlier cases, and need not be discussed. It was intimated on the argument that, in the event of an adverse decision, the relator expected to take an appeal direct to the Supreme Court. Should this be done, the present custody of the prisoner will not be disturbed pending such appeal.

The writ is dismissed.